Donald DAVIS, Jr., a minor by his mother
and next friend, Mrs. Sadie
Davis, et al., Plaintiffs-
Appellees,

v.

SCHOOL DISTRICT OF the CITY OF
PONTIAC, INC., et al., Defendants-
Appellants.

No. 71-1868.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1972.

Decided Feb. 13, 1973.

Kent, Circuit Judge, dissented and
filed opinion.

Robert E. Manley, Cincinnati, Ohio, on brief, for appellants; Dudley & Patterson by Harold W. Dudley and William R. Lightbody, Pontiac, Mich., of counsel.

William Waterman, Elbert L. Hatchett, Pontiac, Mich., on brief, for appellees.

Before EDWARDS, McCREE, and KENT, Circuit Judges.

PER CURIAM.

Defendant School District appeals from an order requiring it to create a position for a third Assistant Superintendent and to hire a Negro to fill the position. Appellant contends that this order interferes with the pedagogical discretion of its officials and that the district does not require a third Assistant Superintendent and, indeed, cannot afford to hire one.

The order appealed from is supplementary to a comprehensive desegregation order entered by the District Court upon a finding of purposeful segregation of the school system. *See* Davis v. School District of City of Pontiac, 309 F.Supp. 734 (E.D.Mich.1970), aff'd, 443 F.2d 573 (6th Cir. 1971), cert. denied, 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971). In affirming this earlier order, we remanded the case to the District Court for continuing supervision of the desegregation of the system. In July 1971, the District Court conducted

a hearing on motions for modification of the desegregation plan initially approved, and at the conclusion of that hearing, the court entered its order containing the provision attacked in this appeal.

It is clear that, when there has been segregation produced by government action, the power of district courts to shape appropriate remedies is broad, and if the creation of a particular administrative position appears to a district court to be useful in carrying out the constitutional mandate to desegregate a school system, appellate courts should not interfere with this discretionary exercise.

Accordingly, because the order in question in this appeal merely recited that the position was to be created by defendant and filled by a black person, we would have ordinarily assumed that it was made in the exercise of the discretion and for the purpose referred to above. However, in colloquy, the transcription of which was furnished the court, the District Judge gave some indication that he entered this part of the supplemental order either because he believed that the board had promised to make such an appointment earlier and had not kept its word with him or because some particular racial balance at the administrative level was desirable for reasons other than to accomplish the desegregation of the school system.

Because we are unable to determine the basis for the entry of the court's order regarding the creation of this administrative position, we vacate this provision of the order to permit him to consider whether the creation of such a position and its filling by a black person in the light of current conditions within the school system is indicated to dismantle the unconstitutional condition that he found to exist.

Vacated and remanded for proceedings not inconsistent with this opinion. No costs will be allowed because a public question is involved.

KENT, Circuit Judge (dissenting).

I find myself unable to join in the opinion of the majority. I recognize that the power of District Courts to shape appropriate remedies to eliminate school segregation deliberately imposed by Government action is broad, and if the record demonstrates a need for a particular administrative position to assist in carrying out the constitutional mandate to desegregate such school system, then the appellate court should not interfere if the trial judge in the exercise of his discretion orders the creation of such an administrative position. However, I cannot agree that an appellate court should ever "assume" that any portion of a broad desegregation order was necessarily made by the trial judge in the exercise of discretion and for the purpose of eliminating unconstitutional segregation of the races within the school without appropriate findings of fact and conclusions of law to support the exercise of such broad discretion.

The record in this case does not reflect any facts which would justify the conclusion that the composition of the administrative staff at the level concerned resulted from any unconstitutional segregation or that the desegregation of such staff or the creation of any new position on such staff would make any substantial contribution to the desegregation of the Pontiac schools. In fact, the undisputed record demonstrates that the school board determined a third assistant superintendent position to be unnecessary, particularly in the light of the financial straits in which the school district found itself. The district judge not only did not find any constitutional violation on the part of the school board because of its failure to have a black assistant superintendent, neither did he find that the creation of such a position was necessary to accomplish the desegregation of the schools. Rather, as stated by the district judge, prior to the entry of the order from which this appeal is taken, as the basis for the entry of the order, "and I don't see how you can

have integration at every other level and still not have it at the assistant superintendent level. *I think* it is good for the black children out there in terms of image. *I think* it is good for the white children out in Pontiac to see a black assistant superintendent of schools. *I think* it is good for people at the policy level to have a black person in there, sitting in, knowing precisely what is happening in that school system. *I think* it is healthy for the entire community." (Supp.App., pp. 136–7). (Emphasis added).

As previously stated, the determination of the appropriate remedies to eliminate past wrongs is necessarily broad, but in the absence of a finding that specific steps are necessary to accomplish the elimination of such wrongs there is no authority in a court of equity to impose upon parties to the action remedies which the trial judge may *think* would be good policy. Policy is for the school authorities, except as and unless such policy creates a condition which offends the Constitution. As pointed out in Swann v. Board of Education, 402 U.S. 1, 15–16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971):

"However, a school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution.

"In seeking to define even in broad and general terms how far this remedial power extends it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.

"School authorities are traditionally charged with broad power to formulate and implement educational policy and might well conclude, for example, that in order to prepare students to live in a pluralistic society each school should have a prescribed ratio of Negro to white students reflecting the proportion for the district as a whole. To do this as an educational policy is within the broad discretionary powers of school authorities; absent a finding of a constitutional violation, however, that would not be within the authority of a federal court. As with any equity case, the nature of the violation determines the scope of the remedy. In default by the school authorities of their obligation to proffer acceptable remedies, a district court has broad power to fashion a remedy that will assure a unitary school system."

At the time of the oral argument in this court counsel informed the court that one of the [two] assistant superintendents had resigned and that there was a vacancy at this level of the administrative staff of the School District of the City of Pontiac. It may be that on remand, as ordered by the majority, the school board will consider the appointment of a black assistant superintendent not because the district judge *thinks* it would be good for the black children but rather because an honest, sincere effort to locate a competent black person qualified to be assistant superintendent of the Pontiac schools would clearly demonstrate that the defendant school board recognizes its obligation to desegregate the Pontiac schools and staff at all levels.

On this record, however, absent findings by the district judge that the failure to create a position for a third assistant superintendent to be filled by a black person was necessary to complete the elimination of segregation within the Pontiac schools, I cannot concur in the opinion of the majority. I would reverse.